| | |
|---|---|
| ANDREA SAUD MARTINEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| NATIONAL UNION FIRE INSURANCE ) | |
| COMPANY, AMERICAN ) | |
| INTERNATIONAL GROUP, INC., and ) | |
| CHARTIS CLAIMS, INC., ) | |
| ) | |
| Defendants. ) | |

On March 5, 2012, Andrea Saud Martinez ("Martinez") filed an action in Wake County Superior Court against National Union Fire Insurance Company of Pittsburgh, PA ("National"), American International Group, Inc. ("AIG"), and Chartis Claims, Inc. ("Chartis") (collectively, "defendants"), arising from a disputed insurance claim. On March 30, 2012, defendants removed the action to this court based on diversity jurisdiction [D.E. 1]. On May 8, 2012, defendants filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure [D.E. 7]. On June 5, 2012, Martinez responded in opposition [D.E. 10], and defendants replied on June 13, 2012 [D.E. 11]. As explained below, the court grants the motion to dismiss and dismisses all claims and defendants except for Martinez's declaratory judgment claim and breach of contract claim against defendant National.

I.

In October 2000, Martinez, a citizen and resident of Sao Paulo, Brazil, incorporated a company in Brazil that facilitated health care clinical trials. See Compl. [D.E. 1-1] ¶¶ 1, 8. In May 2007, Martinez sold her company to AAIPharma, Inc. ("AAIPharma"), a Delaware corporation

headquartered in Wilmington, North Carolina. Id. ¶ 9. Martinez entered into an employment agreement with AAIPharma, which named Martinez as sole manager of the newly-acquired Brazilian subsidiary ("AAIPharma Brazil"). Id. ¶ 10. To satisfy Brazilian law, Martinez also took a small equity stake (0.004%) in AAIPharma. Id. ¶ 11.

In 2008, AAIPharma Brazil incurred "substantial amounts of debt." Id. ¶ 13. In 2009, Martinez relinquished her equity stake in AAIPharma Brazil, but continued working at AAIPharma Brazil to improve its financial situation. See id. ¶¶ 14–15. Ultimately, Martinez resigned from AAIPharma Brazil in October 2009 based on her disagreement with AAIPharma's management decisions. Id. ¶ 16. In December 2009, AAIPharma announced the end of operations for AAIPharma Brazil, including terminating AAIPharma Brazil's employees. Id. ¶ 17. AAIPharma Brazil ceased operations around March 2010. Id. ¶ 23.

Former AAIPharma Brazil employees soon commenced litigation in Brazilian courts, alleging violations of Brazilian employment laws. See id. ¶ 19. Based on her position as sole manager of AAIPharma Brazil and her equity stake, Martinez was sued, along with AAIPharma Brazil. Id. To date, the Brazilian courts have held Martinez liable to eleven of the eighteen employees who have brought suit. See id. ¶¶ 20–21. The judgments against Martinez total at least $523,333.45 and her legal expenses exceed $235,000.00. Id. ¶ 21.

On March 16, 2010, Martinez submitted a claim to defendants to defend her and reimburse her for costs and expenses incurred as a result of AAIPharma Brazil ending operations. Id. ¶¶ 38–39. She claimed coverage under insurance policy number 03-144-34-32 ("the policy") purchased by AAIPharma from National. See id. ¶ 24; Policy [D.E. 8-1] 2, 6.[1] The policy period ran from July

---

[1] Defendants attached the policy to their motion to dismiss and Martinez attached a copy of a letter from Chartis in her response. The court properly considers these documents at the Rule

15, 2009 to July 15, 2010, and included coverage for directors and officers, and employment practices liability. See Compl. ¶¶ 24–25, 34; Policy 3. The policy applied to claims made against insureds "anywhere in the world." Policy 16; see Compl. ¶ 33. Martinez claimed that, "as a manager and officer of AAIPharma Brazil," the policy covered her. Compl. ¶ 31.

On June 14, 2010, Chartis, as National's "authorized representative," replied to Martinez's coverage request. Chartis June 14 Letter [D.E. 10-1] 1; see Compl. ¶ 40. Chartis denied coverage based on its interpretation of Brazilian law. See Chartis June 14 Letter; Compl. ¶ 40. On July 8, 2010, Martinez replied with a different interpretation of Brazilian law. See Compl. ¶¶ 42–43. None of the defendants directly responded to the arguments raised in Martinez's July 8, 2010 letter. See id. ¶ 44.

On November 29, 2010, and February 16, 2011, Martinez filed further information in support of her claim. See id. ¶¶ 45–46. On May 13, 2011, Martinez received a response from "[d]efendants" that further explained the reasons for the denial of her claim. See id. ¶ 47. In July 2011, Martinez and "[d]efendants" exchanged letters about the potential applicability of a different insurance policy, with "[d]efendants" denying that the other policy provided coverage for Martinez's claim. See id. ¶¶ 48–52. Ultimately, the parties reached an impasse about the validity of Martinez's claim, waived the policy's mediation clause, and Martinez filed this action on March 5, 2012. See id. ¶¶ 53–57.

In her complaint, Martinez asserts five claims against all three defendants. First, Martinez seeks a declaratory judgment about whether defendants must pay Martinez's claim. See id. ¶¶ 58–61. Second, she alleges that defendants' denial of her claim constitutes a breach of contract. See id. ¶¶ 62–70. Third, she asserts that defendants' denial of her claim constitutes tortious bad faith

---

12(b)(6) stage because both documents are explicitly referenced in the complaint and their authenticity is unchallenged. See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004).

refusal to pay the claim under North Carolina law. See id. ¶¶ 71–79. Fourth, she asserts that defendants' denial of her claim constitutes an unfair and deceptive trade practice under North Carolina General Statute § 75-1.1 ("UDTPA claim"). See Compl. ¶¶ 80–86. Finally, she seeks an award of punitive damages. See id. ¶¶ 87–89.

II.

Defendants seek to dismiss several of Martinez's claims based on Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. See Defs.' Mot. Dismiss 2. The Federal Rules of Civil Procedure govern procedural issues in cases removed to federal court on the basis of diversity jurisdiction. See Fed. R. Civ. P. 81(c)(1); Hanna v. Plumer, 380 U.S. 460, 473 (1965); Travelers Ins. Co. v. Riggs, 671 F.2d 810, 813 (4th Cir. 1982). But the court "appl[ies] the substantive law of the forum state including its choice of law rules." Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007) (per curiam). Thus, the court applies North Carolina substantive law, including North Carolina's choice of law rules.

In analyzing a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint is legally and factually sufficient to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see Iqbal, 556 U.S. at 678–79. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79.

A.

AIG and Chartis seek to dismiss the breach of contract claim against them because Martinez failed to allege any contractual relationship between AAIPharma or AAIPharma Brazil and either AIG or Chartis. See Defs.' Mem. Supp. Mot. Dismiss [D.E. 8] 5–6. To interpret insurance contracts, North Carolina applies "the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy." Fortune Ins. Co. v. Owens, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000). Here, the policy was delivered to AAIPharma in North Carolina. See Policy 2. Thus, North Carolina substantive law applies to Martinez's breach of contract claim.

In North Carolina, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). Here, Martinez's specific allegations against AIG are that National, the insurer on the policy, is a member company of AIG, and AIG is an authorized insurer in North Carolina. See Compl. ¶¶ 3–4. Martinez then concludes that she is insured under an AIG policy. See id. ¶ 63. The policy itself, however, makes clear that it was "issued only by the insurance company indicated," which was National. Policy 6. Similarly, Martinez's relevant allegations against Chartis are that Chartis is National's claims agent, Chartis is an authorized insurer in North Carolina, and Chartis communicated with Martinez about her claim. See Compl. ¶¶ 4, 40–41, 48–49, 53. Indeed, Chartis identified itself as "the authorized representative of National" in correspondence with Martinez about her claim. Chartis June 14 Letter 1. Acting as an insurer's claims representative is distinct from being an independent party to a valid insurance contract. Moreover, Martinez's generalized allegations against "defendants" throughout her complaint, which unduly combine the actions of three distinct corporate entities, fail to rescue this claim against AIG and Chartis. Thus, Martinez failed to plausibly allege the existence of a valid contract between AAIPharma or

5

AAIPharma Brazil and either AIG or Chartis. See, e.g., Iqbal, 556 U.S. at 678–79; Giarratano, 521 F.3d at 302. Accordingly, AIG and Chartis cannot be liable for breach of contract, and the court dismisses that claim as to AIG and Chartis.

B.

Defendants seek to dismiss the tortious bad faith refusal to pay claim against National, AIG, and Chartis because North Carolina law does not apply to this claim and, alternatively, because Martinez failed to plausibly allege the requisite elements of such a claim. See Defs.' Mem. Supp. Mot. Dismiss 6–11. North Carolina recognizes bad faith refusal to settle an insurance claim as a tort. See, e.g., Cleveland Constr., Inc. v. Firemen's Fund Ins. Co., 819 F. Supp. 2d 477, 483 (W.D.N.C. 2011); Robinson v. N.C. Farm Bureau Ins. Co., 86 N.C. App. 44, 49–50, 356 S.E.2d 392, 395–96 (1987); Dailey v. Integon Gen. Ins. Corp., 57 N.C. App. 346, 349–50, 291 S.E.2d 331, 333 (1982). North Carolina uses the law of the situs test to determine the choice of law for tort claims. See Boudreau v. Baughman, 322 N.C. 331, 335, 368 S.E.2d 849, 854 (1988); Harco Nat'l Ins. Co. v. Grant Thornton LLP, 206 N.C. App. 687, 692, 698 S.E.2d 719, 722 (2010). "[T]he state where the injury occurred is considered the situs of the claim." Boudreau, 322 N.C. at 335, 368 S.E.2d at 854; see Harco, 206 N.C. App. at 692, 698 S.E.2d at 722. The court must scrutinize the allegations in the complaint to determine "where the plaintiff has actually suffered harm." Harco, 206 N.C. App. at 697, 698 S.E.2d at 726. "In cases involving financial injuries, courts have considered the injury to be sustained where the economic loss was felt." Synovus Bank v. Coleman, Civil No. 1:11cv66, 2012 WL 3527966, at *7 (W.D.N.C. Aug. 15, 2012) (quotation omitted); see Harco, 206 N.C. App. at 698, 698 S.E.2d at 726 (determining that the injury occurred in the state where funds were seized from a trust account); United Va. Bank v. Air-Lift Assocs., Inc., 79 N.C. App. 315, 321, 339 S.E.2d 90, 94 (1986) (concluding that the injury occurred in the state where property was sold).

Here, Martinez alleges that National, through its claims agent Chartis, wrongfully refused to pay her claim. National's place of business is New York, see Policy 6, and Martinez received correspondence from Chartis with a New York return address. See Chartis June 14 Letter. Moreover, the complaint alleges that Martinez suffered financial injury in Brazil based on the litigation against her in the Brazilian courts and that Martinez resided in Brazil. See Compl. ¶¶ 1, 19, 21. Thus, Martinez failed to plausibly allege that North Carolina was the jurisdiction where she actually suffered harm.

In opposition to this conclusion, Martinez argues that her injury arose when she "was actually informed that Chartis was denying her claims." Pl.'s Resp. Mem. Opp'n [D.E. 10] 8. Specifically, Martinez argues that she was injured when the claim denial letter reached her attorneys in North Carolina. See id. 9. Martinez's argument fails. To adopt Martinez's approach would permit a party to manipulate the choice of law simply by hiring an attorney in a given state who then receives correspondence in that state. The law of the situs test requires more. Martinez failed to plausibly allege that her injury was suffered in North Carolina; therefore, North Carolina law does not apply to this tort claim. Martinez has presented no argument about any other jurisdiction's law that might govern this tort claim, and the court declines to decide that issue. Instead, the court dismisses the claim without prejudice.

Alternatively, even assuming that North Carolina law applies to Martinez's bad faith refusal to pay claim, Martinez failed to state a claim against National, AIG, and Chartis. To state a claim of an insurer's bad faith refusal to pay a claim, at a minimum, Martinez must plausibly allege an insurer's refusal to pay a valid claim and bad faith. See Dailey, 57 N.C. App. at 349–50, 291 S.E.2d at 333; see also Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd., 11 F. App'x

7

225, 237–38 (4th Cir. 2001) (per curiam) (unpublished).[2]

Martinez's bad faith refusal to pay claim is predicated upon "[a] valid contract of insurance exist[ing] between the [d]efendants and AAIPharma under which Martinez" is covered. Compl. ¶ 71. As for AIG and Chartis, Martinez fails to plausibly allege a valid contract of insurance to which AIG or Chartis was a party. Accordingly, the court dismisses the claim of bad faith refusal to pay against AIG and Chartis. As for National, bad faith is conduct "not based on honest disagreement or innocent mistake." Dailey v. Integon Gen. Ins. Corp., 75 N.C. App. 387, 396, 331 S.E.2d 148, 155 (1985). Here, Martinez has failed to plausibly allege National's bad faith concerning her claim. After stripping away conclusory allegations, such as National had "no reasonable or legitimate reason" to deny her claim or that National "recklessly disregarded" her arguments, see Compl. ¶¶ 75–76, Martinez's complaint alleges that National sent her three letters explaining its position, including its analysis of Brazilian law, and voluntarily waived the policy's mandatory mediation clause. See Compl. ¶¶ 40, 47, 52, 57; see also Chartis June 14 Letter. At most, Martinez alleges an honest dispute with National's interpretation of Brazilian law. That allegation, however, does not plausibly constitute bad faith. See Olive v. Great Am. Ins. Co., 76 N.C. App. 180, 189, 333 S.E.2d 41, 46 (1985); Dailey, 75 N.C. App. at 396, 331 S.E.2d at 155; cf. Iqbal, 556 U.S. at 678–79; Giarratano, 521 F.3d at 302. Accordingly, the bad fath claim against all defendants fails to state a claim upon which relief can be granted under North Carolina law.

---

[2] Some courts applying North Carolina law have mentioned proof of "aggravating or outrageous conduct." See, e.g., Topsail Reef, 11 F. App'x at 237; Cleveland Constr., 819 F. Supp. 2d at 483. But those courts relied upon Lovell v. Nationwide Mut. Ins. Co., 108 N.C. App. 416, 424 S.E.2d 181 (1993), for the tort elements and Lovell set forth the elements "to recover punitive damages for the tort of an insurance company's bad faith refusal to settle." Lovell, 108 N.C. App. at 420, 424 S.E.2d at 184 (emphasis added). Regardless of whether a plaintiff always must prove aggravating conduct, by definition a plaintiff first must plausibly allege a valid claim and the insurer's bad faith.

8

C.

Defendants seek dismissal of the UDTPA claim against National, AIG, and Chartis. See Defs.' Mem. Supp. Mot. Dismiss 7–8, 11–13. The Supreme Court of North Carolina has yet to address the proper choice of law test for a UDTPA claim and the North Carolina Court of Appeals has issued conflicting decisions. See Stetser v. TAP Pharm. Prods., Inc., 165 N.C. App. 1, 15, 598 S.E.2d 570, 580 (2004). On separate occasions, the North Carolina Court of Appeals has employed the law of the situs test used in tort, see United Va. Bank, 79 N.C. App. at 320–21, 339 S.E.2d at 94, and "the most significant relationship" test. See Andrew Jackson Sales v. Bi-Lo Stores, Inc., 68 N.C. App. 222, 224–25, 314 S.E.2d 797, 799 (1984). Thus, absent definitive authority from North Carolina's highest court, this court must "attempt to divine what that court would do were it faced with this [case]." Teague v. Bakker, 35 F.3d 978, 991 (4th Cir. 1994). In doing so, the court may consider cases from the North Carolina Court of Appeals, treatises, and the practices of other states. See Ellis v. La.-Pac. Corp., No. 11-2319, 2012 WL 5378085, at *3 (4th Cir. Nov. 2, 2012); Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005).

The court concludes that the Supreme Court of North Carolina would employ the law of the situs test. See United Dominion Indus., Inc. v. Overhead Door Corp., 762 F. Supp. 126, 129 (W.D.N.C. 1991); see also Stetser, 165 N.C. App. at 14–15, 598 S.E.2d at 580. The United Dominion court reached this same conclusion based on several factors that remain true today. First, in United Virginia Bank, the North Carolina Court of Appeals used the law of the situs test. See United Va. Bank, 79 N.C. App. at 320–21, 339 S.E.2d at 94. Second, the United Virginia Bank court was influenced by a Fourth Circuit case that also determined the law of the situs test applied to a UDTPA claim. See ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 49 n.11 (4th Cir. 1983). Finally, after United Virginia Bank, the Supreme Court of North Carolina has affirmed the

9

continuing validity of the law of the situs test. See Braxton v. Anco Elec., Inc., 330 N.C. 124, 126–27, 409 S.E.2d 914, 915 (1991); Boudreau, 322 N.C. at 335, 368 S.E.2d at 854. Thus, the court applies the law of the situs test to Martinez's UDTPA claim.

As stated in connection with the bad faith claim, Martinez failed to plausibly allege that she was injured in North Carolina. Thus, North Carolina law does not govern this claim. Accordingly, the court dismisses Martinez's UDTPA claim against all defendants without prejudice.[3]

Alternatively, even assuming that North Carolina law governed Martinez's UDTPA claim, Martinez fails to state a claim against AIG, National, and Chartis. In order to state a UDTPA claim, a plaintiff must plausibly allege "(1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." Griffith v. Glen Wood Co., 184 N.C. App. 206, 217, 646 S.E.2d 550, 558 (2007) (quotation omitted). However, "[m]ere breach of contract is not sufficient to sustain" a UDTPA action unless "the breach is surrounded by substantial aggravating circumstances." Id.; see Birtha v. Stonemor, N.C., LLC, 727 S.E.2d 1, 10 (N.C. Ct. App. 2012) (noting that even an intentional breach of contract "is not sufficiently unfair or deceptive" to sustain a UDTPA action). The North Carolina Court of Appeals has emphasized the need to guard against permitting a litigant to transform a breach of contract claim into a UDTPA

---

[3] Even if this court believed that the Supreme Court of North Carolina would adopt "the most significant relationship" test for UDTPA claims, this court's ultimate conclusion would not change. Under "the most significant relationship" test, the court would apply "the law of the state having the most significant relationship to the occurrence giving rise to the action." Andrew Jackson Sales, 68 N.C. App. at 224–25, 314 S.E.2d at 799; see Stetser, 165 N.C. App. at 15, 598 S.E.2d at 580. Martinez's allegations suffer from the same deficiencies highlighted in the court's law of the situs analysis. Aside from North Carolina being the location where the policy was delivered (which is not dispositive because UDTPA claims are distinct from contractual claims), Martinez alleges no other conduct occurring in North Carolina. Rather, Martinez alleges injuries from litigation costs in Brazil and by an insurer's decisions in New York. Thus, North Carolina does not have the most significant relationship to the events giving rise to Martinez's UDTPA claim.

claim. Birtha, 727 S.E.2d at 10; see PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 346–47 (4th Cir. 1998).

Martinez's allegations against National do not rise above a claim for breach of contract. As discussed, Martinez's complaint establishes a fundamental disagreement between the parties about the policy's coverage of Martinez's claim. But a fundamental disagreement about a contract is not a "substantial aggravating circumstance[]." Griffith, 184 N.C. App. at 217, 646 S.E.2d at 558; see PCS Phosphate Co., 559 F.3d at 224; Broussard, 155 F.3d at 346–47; Cleveland Constr., 819 F. Supp. 2d at 484 (concluding that even though an insurer "did not undertake an investigation of the claim," its actions do "not rise to the level of aggravated conduct"). Thus, Martinez has failed to state a UDTPA claim against National.

As for AIG and Chartis, a UDTPA claim may arise even if the parties do not share a contractual relationship. See Durling v. King, 146 N.C. App. 483, 488–89, 554 S.E.2d 1, 4–5 (2001). However, to be unfair or deceptive, a plaintiff must allege practices by a defendant that were "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Griffith, 184 N.C. App. at 217, 646 S.E.2d at 558 (quotation omitted). Martinez has not plausibly alleged independent actions of AIG and Chartis that were immoral, unethical, oppressive, unscrupulous, or substantially injurious to Martinez. See, e.g., Iqbal, 556 U.S. at 678–79; Giarratano, 521 F.3d at 302. Thus, Martinez has failed to state UDTPA claims against AIG and Chartis.

D.

Finally, defendants seek dismissal of Martinez's claims for punitive damages against National, AIG, and Chartis. See Defs.' Mem. Supp. Mot. Dismiss 5–6, 9–11. The court has dismissed Martinez's bad faith refusal to pay and UDTPA claims against defendants. Thus, the sole

11

remaining claims are for declaratory judgment and breach of contract against National. Martinez is not eligible to receive punitive damages for these remaining claims. See N.C. Gen. Stat. § 1D-15(d); Carcano v. JBSS, LLC, 200 N.C. App. 162, 179–80, 684 S.E.2d 41, 54 (2009). Accordingly, the court dismisses her claim for punitive damages.

III.

In sum, the court GRANTS defendants' motion to dismiss [D.E. 7]. The court DISMISSES counts one (declaratory judgment) and two (breach of contract) except as they relate to National. The court DISMISSES counts three, four, and five against all defendants without prejudice. AIG and Chartis are DISMISSED as defendants.

SO ORDERED. This 30 day of November 2012.

JAMES C. DEVER III
Chief United States District Judge

12

Case 5:12-cv-00170-D   Document 13   Filed 11/30/12   Page 12 of 12